IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

WILLIAM ANDREW SPEIR,           )
                                )
    Plaintiff,              )
                                )
v.                              )     CASE NO. 3:12-cv-328-TFM
                                )     [wo]
CAROLYN W. COLVIN,              )
Acting Commissioner of Social Security, )
                                )
    Defendant.              )

**MEMORANDUM OPINION AND ORDER**

William Andrew Speir ("Plaintiff" or "Speir") applied for supplemental security income under Title XVI and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), on May, 2009 alleging that he became disabled on June 15, 2008 (Tr. 88, 95). After being denied, Speir timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on September 2, 2010. (Tr. 13-23). Speir subsequently petitioned for review to the Appeals Council who rejected review of Speir's case. (Tr. 1-5). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court REVERSES and REMANDS the Commissioner's decision.

## I. NATURE OF THE CASE

Speir seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion   of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

### IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

At the July hearing, Plaintiff did not have legal counsel.  Rather, he was represented by Samantha Lowery, a non-attorney.  (Tr. 13).  At the hearing, Plaintiff testified that he had a high school education plus three years of college and possessed a

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

real estate license.  (Tr. 27, 33).  He testifed that he last worked in real estate sales in 2008, but that he stopped because of a decline in business.  (Tr. 27-28).  Speir said that he can lift up to 20 pounds, sit for 30 minutes, stand for 20 to 30 minutes, and walk on a flat surface for 30 minutes.  (Tr. 29-30).  He said he had difficulty grasping because his fingers were swollen and that he has pain in his knees, fingers, ankles and both of his upper arms.  (Tr. 30-31).  Plaintiff also testified or otherwise reported that he was able to perform household chores, care for his own personal needs, go fishing, and drive a vehicle.  (Tr. 131-137).

Michael McClanahan, a vocational expert, noted that Plaintiff's past jobs as a retail store manager, real estate salesperson, route sales and delivery person, and sales manager were from light to medium exertion and semi-skilled to skilled under the Dictionary of Occupational Titles ("DOT") and medium to heavy exertion and semi-skilled to skilled as described by Plaintiff.  (Tr. 34).  Dr. McClanahan was asked to consider an individual of Plaintiff's age, education, work history, and who had the residual functional capacity as found by the ALJ.  (Tr. 34).  In response, the vocational expert testifed that such an individual could perform some of his past relevant work both as listed under the DOT and as performed.  (Tr. 34).

The ALJ determined in his September 2010 decision that Plaintiff had "severe" impairments of arthritis of the knees and hands, and non-severe impairments of a history of substance abuse and bipolar disorder, but that he did not have an impairment or a combination of impairments listed in or medically equal to one listed in 20 C.F.R. pt. 404, subst. P, app.1.  (Tr. 15-18; Finding Nos. 3, 4).  He also found that Plaintiff's subjective

complaints were not credible to the extent alleged. (Tr. 19). He further found that Plaintiff retained the residual functional capacity to perform light exertion work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), reduced, on a function-by function basis, by an ability to sit for only 30 minutes, stand for only 20 to 30 minutes and walk for only 30 minutes on a level surface. (Tr. 18; Finding No. 5). In light of persuasive vocational expert testimony and other evidence of record, the ALJ determined that Plaintiff retained the capacity to perform past relevant work as a retail manager, real estate salesperson, and a sales manager. (Tr. 19-20; Finding No. 6). Thus, the ALJ found that Plaintiff was not disabled. (Tr. 20).

## V. MEDICAL HISTORY

Medical records from East Alabama Medical Center from May, July and August of 1992 demonstrate Speir suffered from arthritis of the right knee. (Tr. 191-192). Later in early 2003, records from East Alabama Medical Center show Speir was treated for injuries resulting from a car accident and for leg pain. (Tr. 195-198). The radiology report showed "some mild degenerative change of the knee joint." (Tr. 196). In late 1998, Plaintiff presented to the East Alabama Medical Center with chest pain. (Tr. 180). Testing determined Speir suffered from no "acute cardiopulmonary disease." (Tr. 182). Dr. J. Mathews of the Mercy Medical Clinic saw Speir in May and June 2010. (Tr. 323-324). He opined that "the patient has rather extensive osteoarthritis" (Tr. 323) and "the patient continues to have considerable arthritic problems." (Tr. 324).

Other medical evidence dating from 2006 until 2010 shows that Speir was diagnosed and treated for bipolar disorder. In late 2006, Plaintiff was seeing Dr. Ed Kern,

a psychiatrist, for treatment of his bipolar disorder, but upon referral to East Alabama Mental Health Center Speir reported being unable to afford his medication or to pay for his doctor's visits. (Tr. 245-248). Specifically, Speir reported that "I cannot pay for Lamictal and Seroqul each over $550.00 per bottle." (Tr. 261, 306). In March 2007, Speir's medical records show "[p]rogressed symptoms of onset of hypomanic episode." (Tr. 242). In January 2008, Speir reports that he has been unable to afford his medication and that he had an adverse reaction to Lithium. (Tr. 231). In September 2009, Dr. Heather Rowe with East Alabama Mental Health reported Speir's "last manic episode [occurred] two weeks ago." (Tr. 171-172). Later in February 2010, Dr. Rowe reported Speir had suffered from "very brief manic episodes of [about] one day." (Tr. 173). In June and October of 2010, counseling records indicated that Speir is "stable and med compliant." (Tr. 330, 342). However, Speir reported in October 2010 that he had " no income and lives in a camper on his brother's property." (Tr. 342).

## VI.  ISSUES

Speir raises two issues for judicial review:

(1) Whether the ALJ failed to properly weigh all the record evidence of Plaintiff's disability.

(2) Whether the ALJ erred in discrediting Plaintiff's testimony because it was inconsistent the Residual Functional Capacity assessment.

*See* Doc.16 at p.6.

## VII.  ANALYSIS

Plaintiff argues that the ALJ failed to properly weigh all the record evidence of his

disability.  Indeed, the ALJ has a duty to make clear the weight accorded to each item of

evidence and the reasons for the decision.  *Cowart v. Schweiker,* 662 F. 2d 731, 735 (11th

Cir. 1981).  Moreover, when the claimant is not represented by legal counsel the duty

requires that the ALJ "scrupulously and conscientiously probe into, inquire of and explore

for all relevant facts," ensuring that both favorable and unfavorable facts are elicited.  *Id.*

The ALJ found Speir's bipolar condition to be "non-severe".  (Tr. 15-18).  Specifically,

the ALJ noted that

> Dr. Floria Roque, a State Agency licensed psychologist, noted that claimant
> restarted his medications in July 2009 and his condition appeared to be
> stabilized (Exhibit 5 F).  The mental health records indicated that substance
> abuse was no longer a problem and Dr. Roque found it was not material to
> this decision.  In June 2010, mental health records indicated the claimant
> was compliant with treatment and coping well.  He was considered stable.
> (Exhibit 12).

(Tr. 16).

The Eleventh Circuit has held that the claimant's burden of showing severity is

mild, stating:

> Step two is a threshold inquiry.  It allows only claims based on the most
> trivial impairments to be rejected.  The claimant's burden at step two is
> mild.  An impairment is not severe only if the abnormality is so slight and
> its effect so minimal that it would clearly not be expected to interfere with
> the individual's ability to work, irrespective of age, education or work
> experience.  Claimant need show only that her impairment is not so slight
> and its effect is not so minimal.

*McDaniel v. Bowen,* 800 F. 2d 1026, 1031 (11th Cir. 1986).  Although counseling records

from June 2010 and October 2010 demonstrate that Speir's bipolar condition has become

stable over time, (Tr. 330, 342), medical records from September 2009 and February 2010 document Plaintiff's recent manic episodes. (Tr. 171-173). Furthermore, Dr. Ivan Lewis Slavich, consulting physician, examined Speir in July 2009, and diagnosed him with "[b]ipolar disorder" and "[a]lcohol abuse; possible withdrawal symptoms" and recommended "psychiatric rehabilitation [ . . .], as well as alcohol rehabilitation, since *his psychological impairments appear to be his major limiting impairment.*" (Tr. 298) (emphasis added). Thus, the court concludes that the ALJ erred in failing to fully consider Speir's severe impairment of bipolar disorder.

The court also concludes that the ALJ failed to consider Speir's inability to afford medical treatment when determining that Speir has the residual functional capacity to perform work. *See Dawkins v. Bowen,* 848 F. 2d 1211, 1213 (11th Cir. 1988) (While a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, he is excused from noncompliance.) The records are replete with references to Speir's inability to afford his medication. (Tr. 245-248, 261, 306). In addition, there are a number of references to Speir's noncompliance with his medication for undisclosed reasons. (Tr. 211, 225). Moreover, as of October 2010, Speir reported to a medical provider that he "has no income and lives in a camper on his brother's property." (Tr. 342).

In spite of these record references, the ALJ failed to explore this issue with Speir, who was unrepresented by legal counsel, at the hearing held on July 28, 2010. In fact, no questions were asked by anyone about Speir's ability to pay for his medication or how he could obtain the medication without funds. (Tr. 26-35). *See Lucas v. Sullivan,* 918 F. 2d

1567, 1572-73 (11th Cir. 1990) (Where compliance with a prescribed course of treatment is at issue, the ALJ has a duty to fully investigate possible reasons for the alleged noncompliance.)  Thus, this court concludes that the ALJ failed in his duty to properly weigh all the evidence and to "scrupulously and conscientiously probe into, inquire of and explore for all relevant facts" where Speir was proceeding without legal counsel.  *See Cowart,* 662 F.2d at 735.  Accordingly, the Court concludes that this case is due to be remanded for further consideration of the issues of whether Speir can afford medication for his "severe" impairment of bipolar disorder.

Because the court concludes remand is proper as to the preceding issue, the court pretermits discussion of the second issue raised by Speir.  Accordingly, the court concludes that remand is proper for the ALJ to fully consider Speir's severe impairment of bipolar disorder and to determine the effect, if any, Speir's poverty has on his ability to remain compliant with his medication.

## VIII. CONCLUSION

Accordingly, the court concludes that this case is due to be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.  It is ORDERED that in accordance with *Bergen v. Comm'r*, *of Soc. Sec.,* 454 F. 3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **ninety (90)** days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406 (b).  *See also Blitch v. Astrue,* 261 Fed. Appx. 241, 242 fn. 1 (11th Cir. 2008).

A separate order shall accompany this opinion.

DONE this 30th day of September, 2013.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE